UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA & STATE OF
NEW YORK ex rel. ANGELITA RAMOS; BETTY
RODRIGUEZ; and KARINE SAHAKYAN,

                             Plaintiffs,

         -against-

ICAHN SCHOOL OF MEDICINE AT MOUNT
SINAI,

                            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____**

OPINION

12 Civ. 5089 (GBD)

GEORGE B. DANIELS, United States District Judge:

Relators Angelita Ramos, Betty Rodriguez, and Karine Sahakyan ("Relators") filed a sealed *qui tam* action alleging that Defendant Icahn School of Medicine at Mount Sinai ("Defendant")[1] misappropriated money from the United States Government in violation of the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"), and the New York State equivalent, N.Y. State Fin. Law § 189(b) ("NYFCA"), "by monitoring and/or treating ineligible patients in order to increase or maintain its government funding for treatment of victims of the September 11th attacks."[2]　(Second Amended Complaint, ECF No. 38-1, ¶ 1.)　The United States Government declined to intervene and proceed with this action.[3]

---

[1] By stipulation, the parties agreed to substitute Defendant Icahn School of Medicine at Mount Sinai for Defendant Mount Sinai Hospital A/K/A Mount Sinai Medical Center. (ECF No. 18 (so-ordered on July 28, 2014).) The case caption was accordingly changed, and the claims against Defendant Mount Sinai Hospital A/K/A Mount Sinai Medical Center were dismissed without prejudice.

[2] Relators separately allege that "the patients were part of a scientific research project regarding the effects of the September 11th attacks and therefore the inclusion of ineligible subjects tainted the

Defendant moved to dismiss the First Amended Complaint ("FAC") for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Relators, in turn, moved for leave to amend the FAC and file the proposed Second Amended Complaint ("SAC"). Defendant opposed Relators' cross-motion on the ground that amendment would be futile.

Defendant's motion to dismiss is GRANTED. Relators' motion for leave to amend is DENIED.

## PROCEDURAL HISTORY

Relators filed this *qui tam* action on June 29, 2012. (*See* Complaint (ECF No. 9).) In March 2014, the United States Government provided notice of its decision to decline to intervene. (*See* ECF No. 10 (cross-referencing ECF No. 7).) The original complaint was unsealed on April 8, 2014, pursuant to an order of this Court. (*See* Order (ECF No. 8).) Defendant moved to dismiss the original complaint. (*See* ECF Nos. 20 & 21.) On October 16, 2014, with consent of Defendant, Relators filed the FAC. (*See* ECF No. 32.) Defendant filed the instant motion to dismiss on October 31, 2014. (*See* ECF Nos. 33 & 34.) "Rather than debate the sufficiency of the [FAC], [Relators] have elected to seek leave to amend." (*See* ECF No. 39 at 1.) Thus, on December 1, 2014, Relators cross-moved for leave to amend the FAC. (*See* ECF Nos. 37 & 39.) In addition, Relators submitted the proposed SAC, which they argue resolves any deficiencies addressed by Defendant's motion to dismiss. (*See generally* ECF No. 39; ECF

---

scientific research." (Second Amended Complaint ("SAC"), (ECF No. 38-1), ¶ 1.) For the reasons discussed below, this allegation is meritless.

[3] Under the False Claims Act, 31 U.S.C. § 3730(b), and the New York State False Claims Act, N.Y. State Fin. Law § 189, "a private citizen, known as a 'relator,' with personal knowledge of fraud may file a *qui tam* action, in which he brings suit for himself and for the government and/or state in exchange for a share of the damages if the suit prevails." *Kane ex rel. U.S. v. Healthfirst, Inc.*, No. 11 CIV. 2325 (ER), 2015 WL 4619686, at *1 n.1 (S.D.N.Y. Aug. 3, 2015) (citations omitted). "Once a *qui tam* action has been initiated, it is the Government's prerogative either to intervene in and prosecute the case or to decline to intervene, thereby permitting the relator to proceed alone." *See id.*

No. 38-1 (SAC).)  Oral argument on the cross-motions was held on May 14, 2015.  Following

oral argument, this Court gave both parties an opportunity to submit letters in further support of

their respective positions.   Relators submitted a letter on May 24, 2015, and Defendant

responded on May 29, 2015.  (*See* Letter from David Abrams, dated May 24, 2015 (not

docketed); Letter from Scott Landau, dated May 29, 2015 (ECF No. 48).)

## ALLEGATIONS

### A.  **SAC Allegations**

Relators allege in the SAC that Defendant received a grant from the federal government

to provide medical services to individuals who were at or around the World Trade Center site of

the September 11, 2001 terrorist attacks.  (SAC ¶ 6.)  The SAC states: "New York monies have

also been contributed to this effort."  (*Id.*)  According to Relators, "[t]he grant established certain

criteria for determining if individuals were eligible to participate in the program."[4]  (*Id.* ¶ 7.)  In

addition, Relators allege that "[p]art of the purpose of the grant was to produce data for

government-funded research" regarding the effects of the attacks, and that "inclusion of

ineligible subjects tainted the scientific research."  (*Id.* ¶¶ 1, 8.)  Relators do not allege that the

federal government established any eligibility requirements.

Relators worked in Defendant's call center for approximately six years until 2011.  (*Id.* ¶

3.)  Their responsibilities included interviewing people to see if they met the eligibility criteria

for services pursuant to the grant at issue.  (*Id.* ¶ 11.)  Relators allege that pressure was put on

---

[4] The "inclusion criteria" were: "1. The Responder was: involved in one or more of rescue, recovery, demolition, debris cleanup and other vital support services, such as security or site monitoring at the WTC, Staten Island Landfill or barge loading piers; and 2. The Responder worked on the WTC effort in one or more of the following 'eligible' locations: a. In the area bounded by Chambers Street on the north, Broadway on the east, Rector Street on the south and the Hudson River on the West[,] b. At the Staten Island Landfill[,] c. At the barge loading piers[,] d. In any areas not mentioned above but south of Canal Street; and 3. The Responder worked 4 hours or more between 9/11101 [sic] and 9114/01 [sic] inclusive; or worked 24 hours or more between 9/11/01 and 9/30/01 inclusive; or worked 80 hours or more between 9/11/01 and 12/28/01 inclusive."  (SAC ¶ 7.)

them to book as many appointments as possible because Defendant "received government funding based, in part, on the number of such individuals who were seen." (*Id.* ¶ 12.)

Prospective patients would call seeking participation in the program. (*Id.* ¶ 16.) Relators and other individuals would speak with the prospective patients and create a record for each patient in Defendant's computer system. (*Id.* ¶ 17-1.)[5] Relators do not allege that those records were provided to the Government. Relators or Defendant's other employees would ask the caller questions and then record the caller as "eligible" or "ineligible" pursuant to the eligibility requirements. (*Id.*) At least one Relator was instructed by her manager to mark ineligible patients as eligible. (*Id.* ¶ 17-2.) Relators cite two specific patients for whom Defendant allegedly created "false records of eligibility." (*Id.* ¶ 18.)

Relators allege that Defendant regularly would submit financial status reports ("FSRs") to the federal government "as part of the process of receiving reimbursement for the research and treatment." (*Id.* ¶ 19.) The Government's "grants policy" allegedly stated that by signing the FSR, Defendant certified that "the information in the FSR [wa]s correct and complete" and that "all outlays and obligations [were] for the purposes set forth in the grant documents." (*Id.* ¶ 20.) It also allegedly stated that an executed FSR "represents a claim to the Federal government." (*Id.*)

Thus, Relators allege that Defendant "created false records of program eligibility," and "the records were material to a false claim because the[y] resulted in the Defendant receiving more monies than it otherwise would have received." (*Id.* ¶ 25.) Relators are seeking the amount that Defendant received for each ineligible patient, (*id.* ¶ 28), as well as all monies

---

[5] Two paragraphs in the SAC are marked as paragraph 17. Therefore, this opinion refers to the first paragraph 17 as "17-1," and the second paragraph 17 as "17-2."

received pursuant to the FSRs because "Defendant's activities would have resulted in tainted research." (*Id.* ¶ 29.)

**B. Defendant's Response to SAC Allegations**

Defendant argues that it was part of a non-government Steering Committee that was responsible for setting and amending the eligibility criteria for participation in its program. (*See* Defendant's Opposition Memorandum, (ECF No. 40), at 7 n.4.) Thus, Defendant argues that the Steering Committee, rather than the Government, determined which patients to include in the program. According to Defendant, Relators are therefore arguing that Defendant violated *its own*, and not the Government's, eligibility criteria.

Defendant further argues that "contrary to Relators' belief (*see* SAC ¶¶ 12, 25), prior to July 1, 2011, Mount Sinai did *not* receive funding for WTC-related health services based on a 'fee-for-service' model, but rather obtained grant funding based on an 'actual costs' model that was not based on/did not take into account the number of patients seen or serviced in the program." (*See* Defendant's Opposition Memorandum, (ECF No. 40), at 12 n.7.)

Defendant does not agree that FSRs constitute "claims" under the FCA. According to Defendant, FSRs are not requests for payment, but are instead "an accounting of how the grantee spent the funds it received during the reporting period." (Defendant's Memorandum in Support of its Motion to Dismiss, (ECF No. 34), at 15 (quoting *United States ex rel. Bauchwitz v. Holloman*, 671 F. Supp. 2d 674, 682, 690 (E.D. Pa. 2009).)

**STANDARD OF REVIEW**

**A. Rule 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

5

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (citation omitted).

### B. Rule 9(b)

Generally, under Rule 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, under Rule 9(b), a plaintiff must abide by a heightened pleading standard to allege fraud. *See* Fed. R. Civ. P. 9(b). "[C]laims brought under the FCA fall within the express scope of Rule 9(b)." *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1477 (2d Cir. 1995) (per curiam).

Under Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Thus, a plaintiff alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (citation omitted); *see also United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th

Cir. 1997) (internal quotation marks and citation omitted) ("At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud.").

### C. Rule 15(a)(2)

Relators seek leave to amend the FAC. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Where, however, amendment would be futile, a court may properly deny leave to amend. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citation omitted). Amendment is "futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted). The analysis herein addresses the sufficiency of the allegations in the SAC to determine if amendment would be futile.

### COUNT I: VIOLATION OF THE FEDERAL FALSE CLAIMS ACT

Relators argue that Defendant violated Section 3729(a)(1)(B) of the FCA, under which "any person who . . . knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . is liable to the United States Government." 31 U.S.C. § 3729(a)(1)(B). The FCA defines "claim" as "any request or demand . . . for money or property" that "is presented to an officer, employee, or agent of the United States." *Id.* § 3729(b)(2)(A). The FCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id.* § 3729(b)(4).

To prove a claim under subsection (a)(1)(B), Relators must show that "(1) the defendant made (or caused to be made) a false statement, (2) the defendant knew it to be false, and (3) the statement was material to a false claim." *U.S. ex rel. Kester v. Novartis Pharmaceuticals Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014) (citing *U.S. ex rel. Pervez v. Beth Israel Med. Ctr.*, 736 F. Supp. 2d 804, 811 (S.D.N.Y. 2010)). Thus, to state a claim, Relators "must allege both (i) a

false record or statement, and (ii) a false claim" for payment made to the Government. *U.S. ex rel. Feldman v. City of New York*, 808 F. Supp. 2d 641, 655-56 (S.D.N.Y. 2011) (citation omitted); *see also U.S. ex. rel. Corporate Compliance Assocs. v. N.Y. Soc'y for the Relief of the Ruptured & Crippled, Maintaining the Hosp. for Special Surgery*, No. 07 CIV. 292 PKC, 2014 WL 3905742, at *15-16 (S.D.N.Y. Aug. 7, 2014) ("[A]n FCA claim must allege the particulars of the false claims themselves, and . . . allegations as to the existence of an overall fraudulent scheme do not plead fraud with particularity.").

"[T]he submission of a 'claim' is an essential element of causes of action under subsection[] . . . a(1)(B)." *Kester*, 23 F. Supp. 3d at 253 (citations omitted).  Other courts in this district have agreed with the First Circuit's decision in *U.S. ex rel. Karvelas v. Melrose-Wakefield Hospital* that "both the fraudulent scheme and the submission of false claims must be pled with a high degree of particularity." *See id.* at 255 (citing *Karvelas*, 360 F.3d 220, 232 (1st Cir. 2004)); *see also Corporate Compliance Assocs.*, 2014 WL 3905742, at *16 (Agreeing with the *Karvelas* decision and "requir[ing] particularized allegations that go toward the filing of false claims").  Relators "cannot circumscribe the Rule 9(b) pleading requirements by alleging a fraudulent scheme in detail and concluding, that as a result of the fraudulent scheme, false claims must have been submitted." *Kester*, 23 F. Supp. 3d at 253 (citation omitted).  Relators "can plead the submission of . . . claims with particularity by providing example claims which are representative of those arising from the fraudulent scheme." *Id.* at 259.

The SAC fails to adequately allege both (1) a fraudulent scheme, and (2) a false claim to the Government.  The SAC, which is Relators' third attempt to sufficiently state a claim, is a scant set of allegations that do not allege the particulars of a false claim.  The allegations do not support that failure to comply with the program's eligibility criteria was at odds with a

Government regulation or statute, or even with the terms of the grant itself, giving rise to a fraudulent scheme. The allegations also do not support that Defendant submitted a false claim for reimbursement to the Government that was either "factually false" or "legally false" under the standard outlined by the U.S. Court of Appeals for the Second Circuit in *Mikes v. Straus*, 274 F.3d 687, 696-700 (2d Cir. 2001).

## A. **The Alleged Fraudulent Scheme**

Defendant argues that Relators have failed to adequately allege that Defendant engaged in a fraudulent scheme. Relators argue that Defendant flouted the grant "eligibility criteria" by treating ineligible patients, creating false records stating that they were in fact eligible, and then relying on those false records to seek reimbursement from the Government. (SAC ¶¶ 7, 12, 17-1, 25.) Relators fail to allege, however, that there is any requirement that Defendant comply with any Government eligibility criteria as a condition precedent to receiving reimbursement. In addition, Relators concede that "there may have been minor changes to the formal eligibility requirements over the years." (*Id.* ¶ 17-2.)

Even assuming every alleged fact to be true, Relators have not alleged sufficient facts to demonstrate that (1) accepting "ineligible" patients as "eligible" violated the terms of the grant; (2) the Government set any eligibility requirements; (3) failure to follow the eligibility criteria was a bar to grant funding; (4) Defendant represented to the Government that all treated patients met certain criteria; or (5) Defendant was reimbursed on a per-patient basis. Moreover, Relators concede that the criteria were subject to change, without alleging who was responsible for such changes. Relators also fail to address Defendant's argument that non-government members of a Steering Committee set and amended the eligibility criteria. (*See* Defendant's Opposition Memorandum, (ECF No. 40), at 7 n.4.)

The alleged creation or retention of false records is not alone actionable under the FCA because neither action independently constitutes a "false claim" to the Government. Relators argue that Rule 9(b) is satisfied because the SAC identifies "the times these records were created[;] the name of the individual who directed that these records were created; the location where the records were created; and the reason for their creation." (*See* Relators' Opposition Memorandum, (ECF No. 39), at 4.) This does not, however, satisfy the "who, what, when, where, and how" requirements of Rule 9(b). *See Thompson*, 125 F.3d at 903. "[A]lthough there is no mandatory 'checklist' of identifying information that a plaintiff must provide, the complaint must include sufficient details about the false claims such that the defendant can reasonably 'identify [the] particular false claims for payment' that are at issue." *Kester*, 23 F. Supp. 3d at 256 (citing *Karvelas*, 360 F.3d at 232). Here, the crucial missing link is *how* the creation of these allegedly false *records* facilitated the submission of a false *claim*. Accordingly, Defendant's SAC fails to allege that Defendant submitted false records or statements that were material to false claims made to the Government.

## B. **The Alleged False Claims**

Defendant argues that Relators have failed to plead the claim submission element with particularity. A "claim" under the FCA is "aimed at extracting money the government otherwise would not have paid." *Mikes*, 274 F.3d at 696 (citation omitted). Relators do not allege that any false eligibility records were submitted to the Government as part of an FSR or otherwise.

There are two types of falsity in the FCA context: factual and legal. *Id.* at 697. The Second Circuit in *Mikes v. Straus* outlined the distinction between "legally false" and "factually false" claims. *Id.* at 696-700. A claim is "factually false" if it includes "an incorrect description of goods or services provided or a request for reimbursement for goods or services never

provided." *Id.* at 697.  On the other hand, a claim may be "legally false" either expressly or implicitly.  *Express* legal falsity occurs where the defendant "falsely certifies compliance with a particular statute, regulation or contractual term, where compliance is a prerequisite to payment." *Id.* at 698.  *Implied* legal falsity is "based on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment." *Id.* at 699.

### 1. *Factual Falsity*

In a post-argument letter to this Court, Relators' counsel wrote:

> Here, the falsity is factual: The Defendant represented to the government that it was treating patients who met certain eligibility requirements.  Thus it was implicit in the Defendant's claims for reimbursement that those requirements had in fact been met.

(Letter from David Abrams, dated May 24, 2015.)[6]  The SAC does not allege that Defendant billed for services it did not provide. *See Kester*, 23 F. Supp. 3d at 260-61 (citation omitted) (Under factual falsity, the party "bills for something it did not provide").  Instead, Relators argue that Defendant billed for services that it provided to ineligible patients, for which Defendant was not entitled to reimbursement.  Thus, there is not a sufficiently-pleaded allegation of "factually false" certification.

---

[6] While Relators' counsel characterizes this as a claim of "factual falsity," he seems to be arguing that the claim is "legally false" based on a theory of "implied false certification."  Elsewhere, Relators' counsel stated that Defendant "made an implicit false certification of eligibility."  (Relators' Opposition Memorandum, (ECF No. 39), at 6.)  Thus, it is not clear under which theory Relators allege that Defendant made a false claim.  In *Corporate Compliance Associates*, the court held that even though "the Complaint allege[d] that the defendants' false claims were accompanied by an express *or* implied certification," the relator "fail[ed] to state a claim of false legal certification," in part, because the complaint did not distinguish between express and implied legal falsity.  2014 WL 3905742, at *17 (internal quotation marks and citation omitted).  Relators' allegations are vague, do not plead fraud with particularity, and fail to give Defendant notice of the claims against it.

### 2. *Legal Falsity*

Relators must then sufficiently allege a "legally false" claim to prevail.  The SAC does not allege that Defendant expressly certified compliance with a particular statute or regulation, which leaves only a potential theory of "implied false certification."  *See Mikes*, 274 F.3d at 698. The Second Circuit has stated that "implied false certification" is "appropriately applied only when the underlying statute or regulation upon which the plaintiff relies *expressly* states the provider must comply in order to be paid."  *Id.* at 700 ("Liability under the Act may properly be found . . . when a defendant submits a claim for reimbursement while knowing . . . that payment expressly is precluded because of some noncompliance by the defendant.").  As discussed above, the SAC does not allege that the grant application conditioned reimbursement on compliance with any particular eligibility criteria.  Thus, there is not a sufficiently-pleaded allegation of "legally false" certification.

### 3. *The Financial Status Reports (or "FSRs")*

According to the SAC, Defendant's "claims for reimbursement" are the FSRs that it submitted to the federal government.  Relators allege specific dates on which such reports were submitted.  (SAC ¶ 19.)  In addition, Relators argue that the Government's "grants policy" specifically states that the executed FSR represents a "claim to the Federal government."  (*Id.* ¶ 20.)

The SAC provides inadequate information about what the FSRs entailed or whether Defendant would expect to be reimbursed pursuant to submission of an FSR.  The SAC states that "Defendant created false records of program eligibility . . . [that] were material to a false claim because the[y] resulted in the Defendant receiving more monies than it otherwise would have received."  (*Id.* ¶ 25.)  This speculative general assertion does not explain *when* or *how*

Defendant received money to which it was not entitled. At oral argument, Relators' counsel stated: "Obviously, Mt. Sinai must have requested money at some point for these services from the federal government." (Tr. 17:4-5.) This purported reliance on "common sense," (*see id.* 17:3), is not enough to meet the heightened pleading standard of Rule 9(b).[7]

Relators' counsel wrote in his post-argument letter: "[R]elators do allege that the reimbursement claims and financial status reports, which were based on the false records, were in fact submitted to the government and the Defendant did receive reimbursement on that basis—more reimbursement than the Defendant was entitled to receive based on the applicable eligibility requirements." (Letter from David Abrams, dated May 24, 2015.) The SAC does not include the allegations as characterized by Relators' counsel in this letter. Even if the SAC contained these allegations, however, they are conclusory statements based on assumptions. *See Corporate Compliance Assocs.*, 2014 WL 3905742, at *17 ("Because the Complaint fails to allege with particularity the filing of any false claim, it fails to satisfy the pleading requirements of Rule 9(b).").

## C. The "Tainted Research" Allegations

Relators include allegations regarding "tainted research." (*See, e.g.*, SAC ¶ 8 ("Part of the purpose of the grant was to produce data for government funded research"); *id.* ¶ 29 ("Defendant's activities would have resulted in tainted research and therefore it should be liable to return all monies received as a result of the FSR's . . . .").) Relators fail to cite any authority supporting that such a claim exists under the FCA. Moreover, Relators themselves concede that "Defendant is responsible for producing tainted data even if the grant which paid for medical monitoring *did not directly fund research activities*." (Relators' Opposition Memorandum, (ECF

---

[7] Relators' argument that the 2009 amendments to the FCA disposed of the requirement that the false claim be made *to* the Government is inaccurate and unsupported by law. (*See* Relators' Reply Memorandum, (ECF No. 42), at 5.)

No. 39), at 8 (emphasis added).)[8]  Thus, Relators have not alleged a legally cognizable "tainted research" claim under the FCA.

## COUNT II: VIOLATION OF THE NEW YORK STATE FALSE CLAIMS ACT[9]

Relators bring an identical claim under the NYFCA, New York State Fin. Law § 189(b). The language of the NYFCA mirrors that of its federal analogue. *See Pervez*, 736 F. Supp. 2d at 816 ("[The NYFCA] is closely modeled on the federal FCA"); *Corporate Compliance Assocs.*, 2014 WL 3905742, at \*11 (citations omitted) ("New York courts rely on federal FCA precedents when interpreting the NYFCA."). Under the NYFCA, a defendant is liable if it, *inter alia*, "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." N.Y. State Fin. Law § 189(1)(b). Relators' claims under the NYFCA fail for the same reasons as their claims under the FCA.

## CONCLUSION

Defendant's motion to dismiss the FAC pursuant to Rules 12(b)(6) and 9(b) is GRANTED. Relators' motion to amend the FAC and file the SAC is DENIED.  Relators have not alleged in the SAC that a false claim was submitted to the Government in violation of the FCA, and leave to amend, therefore, is futile.  Moreover, Relators point to no facts that, if alleged, would cure their deficient pleadings.  Thus, Relators' alternative request to further amend the SAC is also DENIED as futile. This case is DISMISSED.

---

[8] Relators' reliance on *U.S. ex rel. Jones v. Brigham & Women's Hospital*, 678 F.3d 72 (1st Cir. 2012), is misplaced.  There, the defendants' statements in their grant application for funding submitted to the National Institute on Aging were predicated on falsified data.  *Id.* at 75.  Here, Relators make no similar allegations regarding submissions of or reliance upon false data in an effort to receive funding from the Government.

[9] Relators refer to this count as "Count I" also.  Because their claim under the Federal False Claims Act is characterized as Count I and precedes this count in the SAC, this Court treats this as "Count II" for purposes of this decision.

The Clerk of the Court is directed to close the open motions (ECF Nos. 33 and 37) and this case.

Dated: September 16, 2015
New York, New York

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge